# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4772 | **DATE** | 9/30/2003 |
| **CASE TITLE** | TRIBUNE COMPANY vs. SWISS REINSURANCE AMERICA CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(7) is hereby denied [7-1]. Status hearing is set for 10/15/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 3 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | 03 SEP 30 PM 4:18 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRIBUNE COMPANY,
a Delaware corporation,

    Plaintiff,

vs.

SWISS REINSURANCE AMERICA
CORPORATION, a New York corporation,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 02 C 4772

Judge Ronald A. Guzmán

DOCKETED
SEP 30 2003

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Swiss Reinsurance America Corporation's motion to dismiss Plaintiff Tribune Company's complaint pursuant to FED. R. CIV. P. 12(b)(7). For the reasons set forth below, Defendant's motion to dismiss for failure to join a necessary and indispensable party is hereby denied.

## BACKGROUND FACTS

In considering a motion to dismiss, a court must accept as true all the well-pleaded material facts in the complaint and draw all reasonable inferences from those facts in a light most favorable to the plaintiff. *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 399 (N.D. Ill. 1994). For purposes of the motion we take the facts alleged in Plaintiff's First Amended Complaint as true. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). Plaintiff Tribune Company ("Tribune") commenced this action on October 25, 2002 by filing a complaint for breach

of contract, pursuant to which Plaintiff's specified insurance agreements, originally contracted with Reliance National Insurance Company ("Reliance"), were to be covered by Swiss Reinsurance America ("Swiss Re"). The First Amended Complaint names as defendant Swiss Re, alleged to have been an undisclosed principal and assignee to Tribune's contracts with Reliance. Tribune acquired Times Mirror on or about June of 1998. On June 14, 2000, Times Mirror and Reliance entered into an Assumption Agreement effective May 1, 1998. The first contract involved Times Mirror's workers' compensation benefits in the states of Connecticut, Colorado, Maryland, New York, Oregon, Pennsylvania, and Rhode Island (the "QSI States"). Reliance agreed to assume Times Mirror's obligations for "any and all of [Times Mirror's] self-insured liabilities" under the workers' compensation laws of the QSI States. Times Mirror paid Reliance $25,695,750 as consideration for Reliance's agreement to assume the obligations for the administration and payment of the January 1977-April 1998 QSI Claims ("QSI Agreement"). (See First Amended Complaint ¶¶ 7-8).

The second Assumption Agreement entered into on June 14, 2000, but effective on May 1, 1998, involved Reliance's agreement to assume "any and all of [Times Mirror's] self-insured liabilities under the workers' compensation laws of California." In this contract, Times Mirror paid Reliance $17,130,500 as consideration for Reliance's agreement to assume the obligations for the administration and payment of the January 1977-April 1998 California Claims ("California Agreement"). (See First Amended Complaint ¶¶ 9-10).

On April 1, 1998, Times Mirror entered into another Assumption Agreement with Reliance, where Reliance agreed with Times Mirror to provide coverage for workers' compensation claims arising after April 1, 1998, for a three-year period. As consideration for Reliance's agreement to

assume these obligations, Times Mirror agreed to pay Reliance annual premiums of $6,093,750, $8,125,000, and $8,125,000 ("GCP Agreement"). (First Amended Complaint ¶¶ 11-12).

Beginning May 1, 1998, Reliance entered into separate contracts with Swiss Re. Swiss Re claims these contracts were "reinsurance contracts." Tribune, on the other hand, claims that these contracts were "assumption agreements" which formed a part of Times Mirror's transaction with Reliance, and that Tribune is entitled to seek performance from Swiss Re pursuant to the terms of the assumption agreements despite the fact that Reliance is now insolvent and was ordered into liquidation proceedings on October 5, 2001.

It is Tribune's position that Swiss Re, and not Reliance's Liquidator, is the true obligor to Times Mirror and that Swiss Re has the legal responsibility to discharge Times Mirror's workers' compensation obligations. Specifically, Tribune asserts that Swiss Re's obligations are a result of its assumption of Reliance's contractual obligations, either through its principal-agent relationship with Reliance, its assumption of Reliance's contractual obligations, and/or a separate contract with Reliance made with the intent of benefiting Times Mirror.

In support of its allegation, Tribune provides documentation of internal communications created by Swiss Re concerning the Reliance-Times Mirror transaction prior to the finalization of that agreement. Swiss Re discussions included statements that the transaction "fail[ed] to meet the risk transfer definition," constituted an "assumption" by Swiss Re of Reliance's obligations to Times Mirror, involved payment from Reliance to Swiss Re of a "fee" as opposed to a reinsurance "premium," and that "all involved agreed this is not bona fide reinsurance." (First Amended Complaint, Ex. G). Additionally, Tribune provided a letter from Reliance characterizing Swiss Re as its "partner" in the Reliance-Times Mirror transaction. (First Amended Complaint, Ex. G). Tribune

3

contends that these communications constitute evidence that the relationship between Swiss Re and Reliance was more in the realm of an assumption than reinsurance and that Swiss Re is thus directly obligated to Times Mirror.

Tribune sets forth ten counts against Swiss Re in its complaint. Counts I through III state a claim for breach of contract against Swiss Re. In Count I, Tribune requests that this Court find Swiss Re liable for its failure to fulfill its obligations as an undisclosed principal to the Assumption Agreement, since Swiss Re exercised direct oversight over the Third Party Administrators ("TPAs") and funded the payments approved and/or made by the TPAs to the beneficiaries of the QSI Claims. Count II sets forth a breach of contract claim against Swiss Re, similarly asserting that, because Swiss Re maintained direct oversight over the TPAs, Swiss Re assumed the status of assignee of Reliance's obligations under the QSI Agreement. In Count III, Tribune asserts that it was the Third Party Beneficiary to the April 1, 1998 contract between Reliance and Swiss Re in that the Reliance-Swiss Re agreement was created for the express benefit of Times Mirror and/or Tribune as it called for Swiss Re to discharge Reliance's preexisting legal obligation to Times Mirror and/or Tribune.

In Counts IV through IX, Tribune seeks declaratory judgments from the Court regarding the same issues. Count IV requests that the Court find that Swiss Re is an undisclosed principal to both the QSI and California Agreements. Count V seeks a declaration from the Court that Swiss Re is assignee of Reliance's obligations under both the QSI and California Agreements. Count VI asks the Court for a declaration that Tribune is the Third Party Beneficiary to the Reliance-Swiss Re contract covering the QSI and California Agreements. Count VII requests that the Court find that Swiss Re is an undisclosed principal to the GCP Agreement between Tribune and Reliance. Count VIII seeks that the Court declare Swiss Re an assignee of Reliance's obligations under the same GCP

Agreement. Count IX asks for a declaration from the Court that Tribune is the Third Party Beneficiary to the contract between Reliance and Swiss Re regarding the GCP Agreement.

Finally, the Tribune asserts in Count X that Reliance's forwarding of payments from Tribune to Swiss Re led Swiss Re to be unjustly enriched at Tribune's expense. Tribune claims that the payments made to Reliance that were forwarded to Swiss Re to cover Times Mirror's workers' compensation claims would constitute unjust enrichment if Swiss Re was not required to fulfill such obligations. As a consequence of the alleged counts of breach of contract, the Tribune alleges that it has sustained damages in an amount "not less than" $225,000.

## DISCUSSION

Swiss Re moves to dismiss Tribune's complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) ("Rule 12(b)(7)") and 19 ("Rule 19") for failure to join a necessary and indispensable party. According to Swiss Re, Reliance's Liquidator ("the Liquidator") is a necessary and indispensable party who cannot be compelled to appear before this Court, and in whose absence this case should not proceed. Specifically, Swiss Re argues that, absent the Liquidator's joinder, complete relief cannot be accorded among the existing parties and that proceeding in the Liquidator's absence could subject Swiss Re to multiple and inconsistent liability.

In determining whether an action should be dismissed under Rule 19, the court's inquiry is not confined to the pleadings. *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (court may consider matters outside the pleadings to resolve any factual questions relating to indispensable parties). Indeed, extrinsic evidence is essential to a court's determination of whether an unnamed party should be deemed indispensable. *Conopco, Inc. v. S.K. Foods*, No. 98 C 1882, 1999 WL 965554, at *7 (N.D. Ill. Sept. 30, 1999).

In order to determine whether the Liquidator is an indispensable party, a two-part inquiry must be performed under Rule 19. *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). It must first be determined whether the Liquidator is a "necessary" party[1] under Rule 19(a). *Id.* If the court determines that the party qualifies as a "necessary" party and can be joined, the court shall order that person to become part of the proceedings. *Id.*; *see* FED. R. CIV. P. 19(a). If, however, the court concludes that the party should be included in the action but it cannot be, the court must proceed to examine four criteria set forth in Rule 19(b) to determine whether the litigation can proceed at all in the party's absence or whether the action should be dismissed. *Davis Companies*, 268 F.3d at 481; *see* FED. R. CIV. P. 19(b); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604 (3d ed. 2001). This question is commonly analyzed as whether this necessary party is "indispensable." *Darush v. Northern Trust Co.*, 1996 WL 99903, at *3 (N.D. Ill. Feb. 29, 1996) (citing *Pasco Int'l (London) Ltd. v. Steno graph Corp.*, 637 F.2d 496, 501 n.13 (7th Cir. 1980)); *Krueger v. Cartwright*, 996 F.2d 928, 933 (7th Cir. 1993)). If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as "indispensable" and the action is subject to dismissal. *Davis Companies*, 268 F.3d at 481.

> Under Rule 19(a), joinder of a party is "necessary" if:
> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple,

---

[1] The term "necessary" parties has been omitted from 19(a) of the Federal Rules and replaced with the query of whether a party is one that should "be joined if feasible," however, courts still generally utilize the term "necessary" to refer to parties that satisfy the criteria of Rule 19(a). *Davis Companies*, 268 F.3d at 481; *Burger King Corp. v. Am. Nat'l Bank & Trust Co. of Chicago*, 119 F.R.D. 672, 675 n.1 (N.D. Ill. 1988).

> or otherwise inconsistent obligations by reason of his claimed interest. If the person has not been so joined the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

FED. R. CIV. P. 19(a). We conclude that the Liquidator is not a "necessary" party because, in its absence, complete relief can be accorded among those already parties. Additionally, the Liquidator's absence will not effectually expose Swiss Re "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See id.*

In its examination of the "complete relief" provision of Rule 19(a)(1), this Court must determine whether, in the absence of the Liquidator, complete relief can be accorded between Swiss Re and Tribune. Swiss Re contends that complete relief cannot be accorded without joinder of Reliance's Liquidator, claiming that Tribune would be the only party to get complete relief in the absence of the Liquidator should it prevail in its lawsuit. Swiss Re's concern is that it would not receive complete relief should Tribune succeed without joinder of the Liquidator as an order by the Court to pay reinsurance proceeds directly to Tribune would not terminate Swiss Re's liability to the Liquidator for the same proceeds.

Tribune argues that the issue of whether Swiss Re is, or is not, directly responsible for Times Mirror's workers' compensation liability can be fully resolved in the proceeding before this Court. Tribune contends that the "complete relief" factor of Rule 19 is concerned only with those already parties and that a decision by the Court that Swiss Re was an undisclosed principal or an assignee in the Times Mirror-Reliance transaction would completely resolve the issue of whether Swiss Re is directly liable to Tribune for the contract derived from that transaction.

7

Rule 19(a)(1) is concerned with complete relief between the present parties. *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *6 (N.D. Ill. July 31, 1996). The "complete relief" requirement contained in Rule 19(a) concerns the ability of already included defendants to fully satisfy any judgment awarded to a plaintiff. *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984). The term "complete relief" refers only to "relief between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Davis Companies*, 268 F.3d at 484 (quoting *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992) (internal quotation marks omitted)).

In the instant case, complete relief can be accorded between Tribune and Swiss Re. Tribune's claim is that Swiss Re's agreements with Times Mirror were not "reinsurance," but really assumption arrangements where Swiss Re was an "undisclosed principal" and assignee to Reliance's contracts with Times Mirror and thus Swiss Re is the true obligor. Under this theory, complete relief could be accorded between Tribune and Swiss Re without joinder of the Liquidator.

Under Tribune's principal-agent theory, both Reliance and Swiss Re would be jointly and severally liable to Tribune. When an agent for an undisclosed principal contracts with a third party, both the agent and the principal are jointly and severally liable to the third party, provided the agent acted according to its authority, or the principal subsequently ratifies and confirms the agent's acts. *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 664 F. Supp 824, 830-31 (S.D.N.Y. 1987). A plaintiff is under no requirement to join all parties who might be jointly and severally liable. *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995) ("A victim of wrongdoing is not generally required to sue all the wrongdoers, certainly not in a tort case, and not in a contract case either."); *Bedel*, 103 F.R.D. at 81. Thus, in the case at hand, because Tribune's theory is that Reliance acted as the agent for the undisclosed principal Swiss Re, and under a

8

principal-agent theory both the undisclosed principal and agent are jointly and severally liable to the third party, any relief found due Tribune can be completely satisfied without the presence of the Liquidator. If Tribune prevails, complete relief would come with a decision that Swiss Re is responsible for Times Mirror's workers' compensation claims. Therefore, the Liquidator is not necessary for "complete relief" as contemplated by Rule 19. *See id.* at 80.[2]

The second test set out in Rule 19(a) relates to "situations in which the action cannot be effectively adjudicated because the absentee claims an interest in the subject matter of the action and disposing of the case in his absence may prejudice those already before the court or the absentee itself." *Rhone-Poulenc,* 1996 WL 435180, at *8 (quoting WRIGHT, MILLER & KANE, *supra,* § 1604 at 49); *see* FED. R. CIV. P. 19(a)(2). Under Rule 19(a)(2), the court examines whether the absent party claims an interest relating to the subject of the action, and if disposition of the action without the party may "either impede the absent parties' ability to protect its interest or subject a present party to a 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.'" *Rhone-Poulenc,* 1996 WL 435180, at *7 (quoting FED. R. CIV. P. 19(a)(2)(ii)).

In response to the first part of this second test, Tribune argues that the Liquidator's decision not to intervene in this action goes against Rule 19's mandate that the absentee "claim[] an interest relating to the subject of the action" before deemed "necessary." *See* FED. R. CIV. P. 19(a)(2). Tribune points to an affidavit offered by Swiss Re that outlines a discussion between Swiss Re and the Liquidator. The affidavit states that Swiss Re forwarded a copy of Tribune's complaint to

---

[2] Swiss Re's objection to Tribune's "complete relief" argument is more appropriately addressed under the second part of Rule 19(a). Swiss Re argues that any order by this Court for Swiss Re to pay on Times Mirror's workers' compensation claims would not free it from the liability to the Liquidator for the same proceeds. Subpart (a)(2) of Rule 19 contemplates the possibility of "leav[ing] any of the persons already parties subject to a substantial risk of incurring double...obligations by reason of the claimed interest." FED. R. CIV. P. 19(a)(2)(ii).

the Liquidator and that "[t]he Liquidator...declined to intervene in this action." (Swiss Re Mem. at p.6, Exhibit G).

In the same affidavit, the Liquidator directed Swiss Re's attention to a provision of an order issued by the Pennsylvania court supervising Reliance's liquidation proceedings which provides that "a reinsurer's payment to a third-party does not diminish the reinsurer's obligation to [Reliance's] Estate."[3] (Swiss Re Mem., Exhibit G). While Swiss Re provided this affidavit in its Motion to Dismiss presumably with the intention to show that the Liquidator may claim an interest in this action later in Reliance's liquidation proceedings, Tribune's position is that the Liquidator does not currently have an interest in the case at hand and will only have an interest if the agreements between Swiss Re and Reliance are determined by this Court to be "reinsurance."

Swiss Re's argument is that the Liquidator's non-intervention may stem from a reluctance to intervene due to the high cost of representing its interests across the country in proceedings related to the multitude of reinsurance contracts it entered prior to its liquidation. Swiss Re also cites other possible reasons for the Liquidator's decision not to intervene in the instant action. For example, the Liquidator may not feel the need to intervene due to an expectation that the Pennsylvania court supervising the liquidation will allow the Liquidator to pursue Swiss Re as a reinsurer and will apply a Pennsylvania statute which mandates that a reinsurer pay the insolvent insurer and not the insured directly.

Under Rule 19(a), the absent party typically must claim an interest relating to the subject matter of the lawsuit in which the party's joinder is sought. *Davis Companies*, 268 F.3d at 483. In making the decision of whether to dispose of a case in the absence of the party sought to be joined

---

[3] The Commonwealth Court of Pennsylvania, the court supervising Reliance's liquidation, issue an order on October 3, 2001, which provides that "Payment made directly by the reinsurer to an insured or other creditor of Reliance shall not diminish the reinsurer's obligation to Reliance, except to the extent provided by law." *See* Swiss Re Mem., Exhibit A ¶ 9.

10

and whether such an action would "impair or impede" that absent party's ability to protect its interest, the absent party must actually claim an interest relating to subject of the action. *Rhone-Poulenc,* 1996 WL 435180, at *8. Courts often consider an absent party's refusal to seek intervention as a factor mitigating against the necessity of joining him pursuant to Rule 19(a). *Burger King Corp. v. Am. Nat'l Bank & Trust Co. of Chicago,* 119 F.R.D. 672, 678 (N.D. Ill. 1988). The reasoning lies in the rationale that an absent party's decision to forego intervention indicates that it does not deem its own interests substantially threatened by the litigation and that, if the absent party does not feel threatened, the court should not, absent special circumstances, second-guess this decision. *Id.*

In the case at hand, it does not appear that the Liquidator has claimed an interest relating to Tribune's case against Swiss Re. The Liquidator was forwarded a copy of the complaint in the instant case and given a chance to intervene but did not choose to petition this Court or the Pennsylvania court supervising Reliance's liquidation for a motion to stay the instant proceedings or indicate any concern with this Court going forward with Tribune's case against Swiss Re.[4] The only indication that the Liquidator claimed an interest relating to the subject matter of the action before this Court is the portion of the affidavit offered by Swiss Re in which the Liquidator indicated that it would still pursue reinsurance obligations owed to Reliance's estate.

The issue then is whether the Liquidator's statement that it would pursue all reinsurance obligations owed to Reliance's estate constitutes a claim of an interest by the Liquidator in the subject matter of Tribune's suit against Swiss Re. On the one hand, the Liquidator may be claiming an interest relating to the contract between Reliance and Swiss Re that contains the words

---

[4] In the past, parties involved in Reliance's liquidation have petitioned the Pennsylvania court handling Reliance's liquidation proceedings, seeking a stay order for litigation involving Reliance insureds and naming specific parties, including cases in front of this Court. *See Koken v. Reliance Ins. Co.,* 784 A.2d 209 (Pa. Commnw. Ct. 2001).

11

"Reinsurance Agreement." On the other hand, the Liquidator may not be claiming an interest relating to the present action, instead deferring to this Court's decision of whether the contract between Reliance and Swiss Re was truly reinsurance or whether Swiss Re was the true obligor to the Tribune-Swiss Re transaction through a principal-agent relationship. In that situation, if this Court found that the contract between Reliance and Swiss Re was not in the nature of reinsurance, the Liquidator would abide by this Court's decision and not pursue Swiss Re for any reinsurance obligations related to the Tribune-Swiss Re transaction.

In all likelihood, the Liquidator for Reliance has decided not to seek intervention because it is not concerned that Reliance's estate will face a demand for payments on Times Mirror's workers' compensation claims if Swiss Re is found to be the true obligor to the Reliance-Times Mirror contract. If this Court finds that Swiss Re is the true obligor to the Times Mirror-Reliance contracts, the Liquidator would not be prejudiced and could actually benefit in that Reliance's estate may not be forced to pay on any of Times Mirror's workers compensation claims. Reliance's estate would only be forced to pay on the claims if a principal-agent relationship is established and Tribune later chose to sue Reliance's estate based under a joint and several liability theory. In either case, a determination by this Court that Swiss Re is the true obligor of Times Mirror's workers' compensation claims could be advantageous to Reliance and may have been the reason for the Liquidator's decision not to intervene.[5]

This Court finds that, the argument that the Liquidator has decided not to intervene in order to defer to this Court's decision of whether Swiss Re was the true obligor to the Tribune-Swiss

---

[5] In *Burger King*, the court found that the party that was sought to be joined was a necessary party under Rule 19(a), despite that that party chose not to intervene in that lawsuit and provided an affidavit to that effect. 119 F.R.D. at 679. In that case, however, the case presented a different scenario in that the party sought to be joined did not intervene for fear that joinder would threaten the court's diversity jurisdiction and feared that demonstrating an interest in the lawsuit would ensure its dismissal. *Id.* In the Tribune-Swiss Re case, the Liquidator's involvement would not create a diversity issue and there does not appear to be another reason for the Liquidator's decision not to intervene.

Re transaction seems to be the more convincing argument. Swiss Re's position that the Liquidator's non-intervention may be the result of the high cost of defending its rights in a multitude of reinsurance contracts or a plan to pursue Swiss Re in the Pennsylvania court supervising Reliance's liquidation is not compelling. Swiss Re presented Tribune's complaint in this action to the Liquidator and was told that the Liquidator would not intervene in this action. Consequently, the Liquidator's decision to forego intervention in the case at hand indicates a lack of the need to join the Liquidator pursuant to Rule 19(a)(2).

While this Court finds that, complete relief can be accorded among those already parties and the party sought to be joined, the Liquidator, has not claimed an interest relating to the subject of the action. We must address Swiss Re's argument that to proceed without the Liquidator would impair the Liquidator's ability to protect Reliance's interest and leave Swiss Re "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* FED. R. CIV. P. 19(a)(2).

Rule 19(a)(2)(i) requires this Court to consider whether disposition of the action before this Court in the Liquidator's absence may "impair or impede" the Liquidator's ability to protect that interest. Swiss Re contends that the interests of the Liquidator could be impaired if this Court were to proceed in its absence. In support of its case, Swiss Re cites *F&M Distributors, Inc. v. Am. Hardware Supply Co.*, 129 F.R.D. 494 (W.D. Pa. 1990). In *F&M Distributors*, the plaintiff and CMI entered into two contracts: one in which the plaintiff purchased equipment from CMI, the other in which CMI contracted to serve as the plaintiff's agent in leasing that equipment to third parties. *Id.* at 495. Under the contracts, CMI collected payments, deducted 15% for its services, and forwarded the balance to the plaintiff. *Id.* CMI later leased the plaintiff's equipment to American but failed to disclose the plaintiff as the owner of the equipment. *Id.*

Later, CMI stopped forwarding payments to the plaintiff. *Id.* at 496. In a separate case, the plaintiff sued CMI, who then filed for bankruptcy. *Id.* Unable to proceed with its suit against CMI, the plaintiff notified the defendant of its claim to all the rights under the contract between CMI and the defendant as the principal to that contract. *Id.* After the defendant failed to make payments, the plaintiff sued the defendant for breach of contract. *Id.* The defendant filed a 12(b)(7) motion, claiming that, without joinder of CMI, the action should be dismissed. *Id.*

The court in *F&M Distributors* found that CMI was a necessary and indispensable party and dismissed the case. *Id.* at 500. The court stated that CMI's interests would be adversely affected if the plaintiff prevailed in its lawsuit against the defendant because the finding would be based on the conclusion that CMI was the plaintiff's agent, which would place CMI in privity with the plaintiff. *Id.* at 498. As a result, CMI's estate would be left without an opportunity to defend its interests in the 15% monthly commission to which it was entitled under the agreement between CMI and the plaintiff. *Id.*

In contrast to *F&M Distributors*, in the instant case, the interest of Reliance's estate will not be adversely affected by a decision by this Court, as discussed above. In *F&M Distributors*, the court found that CMI's estate was at risk of losing an asset in the commission to which it was entitled and that CMI should be given the opportunity to defend its interest in the bankruptcy proceeding. In the case at hand, however, Reliance's estate is not at risk of losing anything if Tribune's suit against Swiss Re proceeds without joinder of the Liquidator. Reliance's estate has no right to the benefit of any payments, even if the contract between Swiss Re and Reliance were found to be reinsurance. Thus, because Reliance's interests will not be adversely affected by a decision by this Court, *F&M Distributors* is distinguishable from the case before this Court.

14

In addition to the question whether Reliance's interests will be impaired, Rule 19(a)(2)(ii) requires this Court to consider whether the parties to the case will be "subject[ed] to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" unless the Liquidator is joined. *See* FED. R. CIV. P. 19(a)(2)(ii). Swiss Re argues that if this Court were to award Tribune the relief that it seeks, a declaration that Swiss Re is the obligor to Times Mirror's workers' compensation claims, Swiss Re may end up having to make payments to both the Liquidator and Tribune on the same claims and thus would be subject to inconsistent judgments, and subsequently inconsistent obligations. Swiss Re's concern is that it would be at risk of having to make payments to Tribune if this Court decides that Swiss Re was the true obligor and to the Liquidator if the Pennsylvania court supervising Reliance's liquidation finds that the contracts between Swiss Re and Reliance were reinsurance agreements. Swiss Re contends that this case would be better decided in the Pennsylvania court supervising Reliance's liquidation where the Liquidator could be a part of the proceedings involved in the decision of whether Swiss Re was the true obligor to Times Mirror's workers' compensation obligations.

Tribune contends that Swiss Re will not be subject to multiple or inconsistent obligations without joinder of the Liquidator. Tribune's argument is that Swiss Re's alleged "reinsurance" obligations to Reliance can only be triggered if Tribune submits a claim to Reliance's estate. Therefore, if this Court finds that Swiss Re is responsible for Times Mirror's workers' compensation claims, Tribune will have no reason to submit claims to Reliance. In that case, the Liquidator will have no reason to seek payment for reinsurance obligations in the Pennsylvania court supervising Reliance's liquidation. Thus, Tribune argues, Swiss Re is not at risk of being subject to inconsistent obligations.

15

This Court finds Tribune's argument convincing. Tribune's case against Swiss Re is based on a theory that Swiss Re was an undisclosed principal and assignee. Should Tribune be able to prove before this Court that Swiss Re is the true obligor to Times Mirror's workers' compensation claims, the Liquidator will have no reason to bring a case against Swiss Re for reinsurance obligations before the Pennsylvania court supervising Reliance's liquidation proceedings. Therefore, Swiss Re will not be at risk for "double, multiple, or otherwise inconsistent obligations."

Swiss Re notes that after Reliance became insolvent and Swiss Re stopped paying on the claims, Tribune has used Guaranty Association[6] coverage to provide funding for Times Mirror's workers' compensation claims on an interim basis and that the Guaranty Association may seek reimbursement from Reliance's estate. Swiss Re's argument is that, despite Tribune's contention that it will submit claims to Swiss Re in the future if this Court finds that Swiss Re is the true obligor, Swiss Re could still face inconsistent obligations if the Guaranty Association seeks reimbursement from Reliance's estate in the Pennsylvania court supervising Reliance's liquidation. Swiss Re's concern is that, if the Guaranty Association seeks reimbursement from the insolvent insurer Reliance, the Liquidator would likely in turn demand payment for reinsurance proceeds from Swiss Re.

The flaw in Swiss Re's argument, however, is the assumption that, if the Guaranty Association pursues Reliance's estate for reimbursement of its expenses, the Pennsylvania court supervising Reliance's liquidation will not honor the decision of this Court and find Swiss Re responsible for those obligations as well. The Guaranty Association in that situation would not

---

[6] Guaranty Associations pay claims covered by policies with insolvent insurers. The goal of these funds is to pay claims without lengthy delays so that policyholders do not suffer financial loss. Financing for Guaranty Associations typically come from the assets of the insolvent insurer. In exchange for assuming the insolvent insurer's obligations to pay claims, the claimant's rights against the insurer on the policy are assigned to the Guaranty Association. *See* Grace M. Giesel, *A Proposal for a Trot Remedy for Insureds of Insolvent Insurers Against Brokers, Excess Insurers, Reinsurers, and the State*, 52 OHIO ST. L.J. 1075, 1088-93 (1991).

16

likely object to that decision because that outcome could be more beneficial to the Guaranty Association as reimbursement would likely come more easily from Swiss Re than the insolvent estate of Reliance. Thus, even with the Guaranty Association's possible claims against Reliance's estate, Swiss Re would not be subject to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* FED. R. CIV. P. 19(a)(2)(ii).

Tribune has brought an action against Swiss Re based on claims involving a principal-agent theory and assignment, both claims of which involve joint and/or several liability. Under either theory, Tribune could choose to sue Swiss Re alone. Swiss Re's argument that it would be subject to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" is a risk of any lawsuit involving joint and several liability. "Anytime a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are not joined suffer the risk of an inconsistent judgment result in a subsequent action." *Klaff v. Wieboldt Stores, Inc.*, No. 84 C 0090, 1988 WL 142163, at *3 (N.D. Ill. Dec. 23, 1988) (quoting *Bedel*, 103 F.R.D. at 81) (internal quotation marks omitted). Such is the nature of joint and several liability. *Id.*

In *Klaff*, a plaintiff sought damages against two parties and the first defendant filed for bankruptcy. *Id.* at *1. The second defendant filed a motion to stay the proceeding against it, claiming that the first defendant was a necessary and indispensable party and that it would be improper to proceed without the first defendant. *Id.* The second defendant's concern was that numerous issues decided would end up being relitigated in the bankruptcy court and that the absence of the first defendant would lead to a substantial risk of the second defendant being subject to inconsistent judgments between the two courts. *Id.* The second defendant could face liability directly in the court deciding its fate and indirectly if the plaintiff were to recover against the first defendant in the

17

bankruptcy court and in turn looked to the second defendant for indemnification. *Id.* at *3. The court in that case held that joint obligors are not necessary and indispensable parties. *Id.* at *2.

In the case at hand, Tribune could have brought its case against Swiss Re or Reliance under a principal-agent theory or solely against Swiss Re under an assignment theory. Similar to the situation in *Klaff*, Tribune chose not to bring suit against both Reliance and Swiss Re in the same court and opted to prosecute its claims against Swiss Re only. In agreement with the *Klaff* court's holding that joint obligors are not necessary and indispensable parties, this Court finds that Tribune had the right to bring suit solely against Swiss Re without joinder of the Liquidator. To dismiss the action on the ground that the Liquidator is necessary and indispensable would deny a principal aspect of joint and several liability.

Additionally, it does not appear that there is a "substantial risk" that Swiss Re will even be subject to suit from the Liquidator. The possibility of action by Reliance's estate against Swiss Re is not sufficiently significant to make the Liquidator a "necessary" party. At this point, no claims have been brought against Swiss Re by the Liquidator and, as discussed above, if this Court finds in favor of Tribune, Swiss Re will not be at risk of having to pay on those claims to Reliance's estate in the future. The risk is made even more remote by the affidavit stating that the Liquidator would not intervene in this action. This affidavit provides persuasive support for the position that a decision by this Court that Swiss Re is the true obligor to the Times Mirror-Reliance contracts will lead the Liquidator to not pursue Swiss Re as a reinsurer and allow Swiss Re to assume the obligations under those contracts.

Ultimately, the decision of whether the Tribune-Reliance and Swiss Re-Reliance contracts were truly reinsurance can be decided by this Court and, until this Court has an indication that the Liquidator has claimed an interest relating to the subject matter of this action and that Swiss

Re is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," this Court has no reason to dismiss this case for failure to join a necessary and indispensable party.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is hereby denied (#7-1).

SO ORDERED

ENTERED: 9/30/03

RONALD A. GUZMAN
United States District Court